UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL D. HARRISON,

            Plaintiff,

    v.

T. MOORE, et al.,

            Defendants.

Case No.  1:08-cv-1065-AWI-MJS (PC)

**FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 202)**

**FOURTEEN (14) DAY OBJECTION DEADLINE**

## I.    PROCEDURAL HISTORY

Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action brought pursuant to 28 U.S.C. § 1983.   The action proceeds against Defendants Moore, Davis-Jones, Rabaino-Burns, Dava, Kim, Galvan, C. Gonzalez, M. Gonzalez, O'Neal, Parsons, Roth, Tumayo, Urbano, Vicente, Casio, Cisneros, and

1  Coronado on Plaintiff's Eighth Amendment claims.  (ECF No. 160.)[1]

2  On September 18, 2014 Defendants moved for summary judgment (ECF No.

3  202).   Plaintiff filed an opposition on October 2, 2014 (ECF No. 210), and Defendants

4  replied on October 9, 2014 (ECF No. 211).

5

6  Local Rule 230 (l) permits only the filing of a response by the party opposing a

7  motion and a reply by the moving party. However, both parties have filed a number of

8  additional items in connection with this matter without leave of Court or objection from

9  the opposing party. Accordingly, the Court will give them all some consideration in

10  connection with this motion for summary judgment

11  **II.      LEGAL STANDARD – MOTION FOR SUMMARY JUDGMENT**

12  Any party may move for summary judgment, and the Court shall grant summary

13  judgment if the movant shows that there is no genuine dispute as to any material fact

14  and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Wash.

15  Mut. Inc. v. United States, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position,

16

17  whether it be that a fact is disputed or undisputed, must be supported by (1) citing to

18  particular parts of materials in the record, including but not limited to depositions,

19  documents, declarations, or discovery; or (2) showing that the materials cited do not

20  establish the presence or absence of a genuine dispute or that the opposing party

21

22  cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1). The

23  Court may consider other materials in the record not cited to by the parties, but it is not

24  required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist.,

25  237 F.3d 1026, 1031 (9th Cir. 2001).

26

27

28  [1] Defendants Johnson, Bastianon, Zakari, Edmonds and Raygoza have not been served in this action and have not otherwise appeared in it.  (ECF Nos. 238 and 245.)

Plaintiff bears the burden of proof at trial, and to prevail on summary judgment, he must affirmatively demonstrate that no reasonable trier of fact could find other than for him. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). Defendants do not bear the burden of proof at trial and, in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun, 509 F.3d at 984, and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  However, "conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." Angle v. Miller, 673 F.3d 1122, 1134 n.6 (9th Cir. 2012) (citing Soremekun, 509 F.3d at 984).

### III.   FACTUAL SUMMARY

**The Court finds the following facts to be undisputed:**

On April 20, 2007, Plaintiff injured his arm during a fight with another inmate. Plaintiff was seen by an MTA immediately after the fight; she indicated Plaintiff had some scratches to his face but no other injuries. (ECF No. 202-7, at 121.) Later in the day, Plaintiff was seen again by a nurse, who indicated that his arm pain would be followed up on. (ECF No. 202-3, at 13.)  At some point, Plaintiff received an ice pack, and he was prescribed ibuprofen from April 23 through April 30 (ECF No. 202-3, at 16.)

On April 24, 2007, Plaintiff had an Interdisciplinary Treatment Team (IDTT) mental health review attended by Urbano, a social worker, Cisneros, a correctional sergeant,

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Roth, a psychologist, and Parsons and Gonzalez, both LPTs.  Notes taken by Urbano indicate that Plaintiff appeared stable and reported "doing all right." (ECF No. 202-3, at 15.)  No mention is made in the notes of Plaintiff's injury.

On April 26, Plaintiff had an appointment with Zakari, a psychiatrist, whose notes made no mention of arm pain and indicated that Plaintiff was "stable" and "fully oriented." (ECF No. 202-3, at 27.) Plaintiff then saw Roth, who noted that Plaintiff had been in a fight and wanted to be transferred to get "better services."  (ECF No. 202-3, at 30.) Roth's notes conclude that Plaintiff "maintains stability" and shows "no acute distress," but made no mention of complaints of pain. (Id.)

On May 1, Plaintiff filed a medical call slip requesting an X-Ray. He indicated that although the swelling in his arm had gone down, his arm was still in pain. (ECF No. 202-3, at 36.)  He was put in the medical line for May 3. At his May 3 appointment, he was X-rayed and referred to surgery for an olecranon fracture (ECF No. 202-3, at 39).

On May 8, Plaintiff saw Defendant Nurse Burns regarding complaints about his pain medication. Burns' notes indicate that she referred Plaintiff to a doctor to discuss medication changes, but that she would not refer him to an outside facility without him seeing a prison doctor first. (ECF No. 202-3, at 47.)

Dr. Smith saw Plaintiff on May 9,2007, and scheduled urgent surgery for May 10. Surgical sutures were removed on May 30. (ECF No. 202-3, at 64.)

Licensed Psychiatric Technicians came to Plaintiff's cell door on a daily basis to ask about his mental health status.  From April 20 until May 3, 2007, the notes from the daily rounds indicate no reported mental health issues; they do not mention physical injuries or pain. (ECF No. 202-3, at 7, 22, 32). On May 4, 2007, an LPT reflects Plaintiff's report that his arm had been X-Rayed. (ECF 202-3, at 32.)  From June 6 until September

4

1, 2007, daily round notes indicate a lack of both mental health issues and complaints of arm pain or physical ailment of any kind. (ECF Nos. 202-3, at 72, 74, and 202-4, at 11-12, 16-17, 19, 21, 31-32, 48-49, 51.)

On June 6, 2007, Smith, the orthopedic surgeon who operated on Plaintiff, noted a superficial infection at the incision site. Plaintiff was put on a week's course of the antibiotic ciprofloxacin.  (ECF 202-3, at 77.)  On June 14, Plaintiff requested follow-up treatment for his arm; Vicente referred him to the medical line that day.  (ECF 202-3 at 81.) Notes from the subsequent appointment indicate that the wound was healing (ECF No. 202-3, at 82-83.)  Plaintiff requested an ibuprofen refill June 16, and received it via Rabaino-Burns on June 18 (ECF No. 202-3, at 85.)

On June 21, 2007, Plaintiff submitted a medical request form that stated, "My operation on my right arm is hurting a lot and puss [sic] is coming out of it." He requested a dressing change. (ECF No. 202-4, at 4). He was seen June 22 for a complaint of pus/discharge having begun the previous night.  The examiner described the wound as red, swollen, and tender. A wound culture indicated methicillin resistant staphylococcus aureus (MRSA), but staff concluded the strain was not resistant to doxycycline, and Plaintiff was put on the antibiotic doxycycline for a week (ECF No. 202-4, at 5, 8, 9.)  In a June 27, follow-up,  Dr. Smith  noted Plaintiff was still taking antibiotics and his wound appeared to be healing (ECF No. Smith ECF 202-4, at 14).

Ina July 16, 2007, follow-up Urbano noted that Plaintiff reported "doing alright;" Urbano  does not mention health complaints or concern.  (ECF No. 202-4, at 20.)  At an IDTT review on July 23, Urbano, Parsons, Zakari, and Roth wrote that Plaintiff "reports good health." (ECF No. 202-4, at 22, 24.)

1  Plaintiff submitted two medical request forms on August 7 and 8, 2007, indicating

2  that he had a "large bump with green pus."  (ECF No. 202-4, at 34-35).  On August 8,

3  Nurse Vicente noted a "soft tender area with purulent discharge." at the wound site.

4  (ECF No. 202-4, at 36.) He referred Plaintiff to the yard physician, who prescribed

5  Bactrim, an antibiotic, for a week, and dry dressing changes. (ECF No. 202-4, at 42.)

6  Another wound culture was done on August 10 (Id., at 42.)

7  

8  On August 15, 2007, Plaintiff submitted a medical request form stating "my right

9  elbow has gotten infected 3 times since the operation. Please have me treated by a

10 doctor." He requested bandages, pads, and antibiotics. His wound was cleaned, his

11 bandage was changed and he was scheduled to see a doctor August 23. (ECF No. 202-

12 4, at 54.) On August 23 Dr. Kim **reported that** Plaintiff's wound was healing well without

13 discharge.  Kim prescribed no additional medication.

14 

15 On August 24, Rabaino-Burns noted slight swelling, discharge and the possibility

16 of a secondary infection.  (ECF No. 202-4, at 59.) She instructed Plaintiff to continue

17 monitoring his wound and apply dry dressings. (Id.)

18 Plaintiff submitted medical call slips on August 28 and August 29, 2007,

19 indicating that the wound was bleeding and leaking green pus.  An August 30 nurse's

20 notes confirms swelling, purulent discharge, and feverishness.  An "urgent" referral was

21 made to Dr. Smith and  Plaintiff was put on two antibiotics – Bactrim and Rifampin.

22 (ECF No. 202-4, at 64.)

23 

24 An  August 31, 2007, X-ray indicated osteomyelitis. (ECF No. 202-4, at 67.)

25 Plaintiff was admitted to the hospital on September 2, and discharged on October 11,

26 after a monthl ong course of intravenous antibiotics. His prognosis was considered to be

27 

28  6

good. (ECF No. 202-4, at 74-76.)  He requested and was provided pain medication -- ibuprofen -- upon release. (ECF No. 202-5, at 11.)

On November 22, 2007, Plaintiff submitted a medical request form stating that his "osteomyelitis had come back." (ECF No. 202-5, at 19.) He was seen by Dr. Kim on November 26, but notes of the visit indicate no swelling or present discharge was found, although Plaintiff had claimed some clear drainage.  (ECF No. 202-5, at 20.)  Dr. Kim's X-ray was interpreted as inconclusive for osteomyelitis, and an MRI was recommended. (ECF No. 202-5, at 22.)

On follow-up November 29, 2007, no external signs of infection or osteomyelitis were recorded (ECF No. 202-5, at 25.)

On November 30 Plaintiff submitted a new  medical request form indicating his wound was swollen and bleeding and his osteomyelitis had returned. (ECF No. 202-5, at 26.)  He was referred for an MRI. (ECF No. 202-5, at 27.)   The resulting, December 10, MRI was inconclusive, and another scheduled. (ECF No. 202-5, at 35.)

Notes from a December 17, 2007, appointment indicate that the osteomyelitis had resolved (ECF No. 202-5, at 36), but Plaintiff was put on antibiotics. (ECF No. 202-5, at 40.)

Plaintiff submitted medical request forms on January 3 and 6, 2008 complaining of arm pain and fear that his osteomyelitis had returned.  On January 11, 2008, it was noted that his wound had opened and there was clear discharge.  Plaintiff was referred for an MRI and a follow-up exam was scheduled January 23. (ECF No. 202-5, at 45.)  In the interim, Plaintiff submitted two medical request forms indicating his osteomyelitis had returned. (ECF No. 202-5, at 46.)

A January 23, 2008, MRI indicated no recurrent osteomyelitis, but tendinopathy, or inflammation and tearing of the tendons, in his elbow. (ECF No. 202-5, at 51.)  Plaintiff nevertheless was prescribed ciprofloxacin through February 22. (ECF No. 202-5, at 38.)

Plaintiff submitted three health care requests January 25, 26 and 30, 2008, indicating sharp pain, wound re-opening, and return of osteomyelitis, and requesting to be sent to an outside facility.  (ECF No. 202-5, at 52-54.)  A February 1, 2008, appointment indicate his wound was "non-healing." (ECF No. 202-5, at 61.)

On February 26, 2008, he refused debridement or any other treatment from anyone at Corcoran. (ECF No. 202-5, at 70).  His elbow was drained at Mercy Hospital March 7, 2008. (ECF No. 202-5, at 82.) A wound culture revealed MRSA and Plaintiff was put on Bactrim. (ECF No. 202-6, at 4).  Immediately upon return from the hospital, he submitted several health request form complaints of  continued pain and discharge from the elbow.  His course of antibiotics ran out in mid-March, and he submitted multiple requests for their renewal.  (ECF Nos. 202-6, at 7, 9, 14, 15, 19.)

On March 21, 2008,  Nurse Dava reported Plaintiff's wound was not red or swollen and deferred further treatment until his April 3 doctor's appointment. (ECF No. 202-6, at 20.)  In response to three more medical health slips, Dava saw Plaintiff again on March 25 (ECF No. 202-6, at 25.)  Dava again notes no swelling, redness, or discharge, and informed Plaintiff of the scheduled April 3 follow up.

On March 28, 208,  MRSA was diagnosed and  Plaintiff was put back on antibiotics and referred to an orthopedic surgeon. (ECF No. 202-6, at 37.)  An April 3 appointment was frustrated by a lockdown, but on April 17, Plaintiff underwent debridement at Mercy, and the entire olecranon process, identified as the nidus of the persistent MRSA infection, was removed. (ECF No. 202-6, at 50, 53.)  Plaintiff was put

on intravenous vancomycin on April 17 and discharged from Mercy April 28, 2008. (ECF No. 202-6, at 81.)  He was kept on vancomycin until May 26, 2008, and then discharged to the yard  June 2, 2008.  (ECF No. 202-7, at 14.)

## IV.   PARTIES' ARGUMENTS

### A. Defendants' Arguments

Defendants argue that Harrison was provided appropriate medical care consistently and without delay from the time he first brought his injury to the attention of *medical* staff. They argue that Harrison did not mention his physical ailments to *mental* health staff, and even if he did, their failure to respond did not cause unconstitutional delay because Plaintiff was already being treated.  The Court addresses the arguments of the defendants below.

#### 1.  Sgt. Moore

Moore was the Administrative Segregation Sergeant at the time that Plaintiff fought with his cell mate.  He had approved the cell assignment that had put the two inmates together.  He denies he was medically indifferent.  On April 20, 2007, following the fight, Plaintiff was seen by an MTA, who found that Plaintiff had two scratches on his face.  Plaintiff was seen by a nurse in the evening, who scheduled Plaintiff for a follow up on April 23.  Later in the day, Moore assigned Plaintiff to a different cell. (ECF No. 202-7, at 105.)

#### 2.   Nurse Davis Jones

Davis Jones states that she does not recall having come into contact with Plaintiff at all on April 20, 2007.  Therefore, she denies showing deliberate indifference to Plaintiff's medical needs.

9

### 3.  Nurse Rabaino-Burns

Rabaino-Burns denies being medically indifferent at Plaintiff's May 8, 2007. Plaintiff had requested a change in his pain medication, and care at an outside facility. Rabaino-Burns determined Plaintiff's vitals were stable, informed him she did not think his condition was an emergency, and referred him to the medical line.  (ECF No. 202-7, at 50.)  She argues that she had no constitutional obligation to refer Plaintiff to an outside facility or to have his medications changed on an emergency basis.

### 4.  Mental Health Staff: Psychologist Roth, Correctional Counselor Cisneros, LPTs Parsons, M. Gonzalez, C. Gonzalez, Galvan, Casio, O'Neal, Coronado, and Tamayo[2]

Mental health Defendants deny that they are responsible for failing to procure additional medical care for Plaintiff's injuries during the periods April 20-May 3 and June 6-September 1.  They argue first, that Plaintiff did not bring any complaints to them or request help and, second, that Plaintiff was under continuous care by medical staff during these periods, so that even if they did fail to respond, Plaintiff did not suffer any delay in treatment (ECF No. 202-1, at 25.)

### 5.  Nurse Vicente

Vicente denies that her care of Plaintiff was medically indifferent.  On May 3, 2007, Vicente responded to Plaintiff's medical call slip in which he complained of arm pain, requested an X-Ray, and asked for a refill of his pain medication.  She noted swelling, tenderness, and fluid at his right elbow, but concluded that he was not in distress. Plaintiff was X-Rayed that day, and scheduled for a follow-up for May 10.

---

[2] As noted, Psychiatrist Zakari and LPTs Edmonds, Raygoza, Johnson, and Bastianon have not been served or appeared in this action.  The claims against them are not addressed in these Findings and Recommendations.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### 6.  Defendant Kim

Defendant Kim denies that he was deliberately indifferent for failing to send Plaintiff to a hospital in August or November 2007.  At the August 23, 2007 appointment, Kim ordered continued wound care and Plaintiff was instructed to notify medical staff if his symptoms worsened.  Even though no signs of infection were present at the November 26, 2007 appointment, Kim ordered X-Rays and a wound culture.

### 7.  Defendant Dava

Defendant Dava denies that he was deliberately indifferent to Plaintiff's medical needs on March 21 and March 25, 2008.  In his declaration, Dava states that he first saw Plaintiff on March 21 in response to his medical request for renewal of ciprofloxacin.  On exam, Dava noted no swelling, warmth, redness, or discharge. (ECF No. 202-7, at 45.) Dava saw Plaintiff again on March 25, 2008 in response to another medical care request to be seen by a doctor and have his ciprofloxacin refilled.  Again, Dava reported no bleeding, swelling, warmth, redness, discharge, odor, or reduction in range of motion.  At both appointments, Dava informed Plaintiff that he was scheduled for a follow-up appointment April 3, 2008.  In response, on March 25, Plaintiff became upset, left the room, and tried to force his way into the primary care physician's office.  He subsequently was seen by a doctor on March 28 and then referred to an orthopedic surgeon.

### B.  Plaintiff's Arguments

Plaintiff claims that certain providers' care during the periods April 20, 2007 through May 3, 2007; June 6, 2007 through September 1, 2007; and March 21, 2007 through March 25, 2007 fell below constitutional standards.  He also alleges one claim against Nurse Rabaino-Burns on May 8, 2007.  (ECF No. 210, at 1, 6.)

### 1. Moore

Plaintiff alleges that in the immediate wake of the assault, at 2:30 p.m. on April 20, 2007, Plaintiff showed Moore his bruised, swollen arm and asked Moore if he could go to the hospital. In response "Moore refused and left [him] to suffer deliberately… for 13 days." (ECF No. 210, at 4.)

### 2. Nurse Davis Jones

Plaintiff alleges that on April 20, 2007, he showed Davis Jones his arm, which was swollen and bruised, and requested to go to the hospital. Davis Jones told Plaintiff, "If you can move it, it ain't broke." (ECF No. 210, at 4.)  She then instructed Plaintiff to move his arm.  Plaintiff moved it, though it caused him great pain. Davis Jones concluded, "It ain't broke," refused to send Plaintiff to the hospital and left him to "suffer needlessly" for 13 days.

### 3. Nurse Rabino-Burns

Plaintiff alleges he showed his broken arm to Nurse Rabaino-Burns on May 8, 2007 and requested to go to the hospital.  She told him that his body was "healing itself" and thus that he didn't need a doctor.

### 4. Mental Health Defendants

Plaintiff alleges that he complained about pain in his arm to the mental health Defendants during daily psychiatric rounds, IDTT reviews, and appointments with Urbano and Roth, but that all ignored his requests for medical care, and purposely omitted mention of either the complaints or the requests in their notes. He also claims his bruised, swollen, oozing arm was visible to mental health Defendants.

12

### 5.  Dr. Kim

Plaintiff alleges that in August 2007, he showed Dr. Kim his arm, which by that point "was infected with throbbing & discharging blood and pus & hurting real bad," and requested to be admitted to the hospital.  Kim refused and told Plaintiff, "You have to have the right [antibiotic] or it's nothing.  So I'll give you nothing." (ECF No. 210, at 4.)  Plaintiff was not prescribed any antibiotics.  Plaintiff also claims that Kim was deliberately indifferent in November 2007, when he failed to send Plaintiff to a hospital.

### 6.  Defendant Dava

Plaintiff contends when he saw Dava on March 21, 2008, his infection was "bleeding and discharging puss [sic] & hurting real bad," that Defendant knew Plaintiff had an active MRSA infection and was suffering, but deliberately "attempt[ed] to stall me off long enough for the infection to kill me." He claims Dava lied when he said Plaintiff left the March 25 appointment in anger, and alleges that Dava's refusal on that date to renew the ciprofloxacin prescription was another deliberate attempt to delay treatment long enough for Plaintiff to die of his infection.

## V.  DISCUSSION

### A.  Legal Standard – Eighth Amendment

The Eighth Amendment of the United States Constitution entitles prisoners to medical care, and a prison official violates the Amendment when he acts with deliberate indifference to an inmate's serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104(1976); Peralta v. Dillard, 744 F.3d 1076, 1081 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  "A medical need is serious if failure to treat it will result in significant injury or the unnecessary and wanton infliction of pain." Peralta, 744 F.3d at 1081 (citing Jett, 439

F.3d at 1096). Examples of a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014).

A prison official shows deliberate indifference to such a need if he "knows of and disregards an excessive risk to inmate health." Peralta, 744 F.3d at 1082 (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994). This "requires more than ordinary lack of due care." Colwell, 763 F.3d at 1066 (citing Farmer, 511 U.S. at 835).  Instead, the prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Colwell, 763 F.3d at 1066.  Prison officials may demonstrate deliberate indifference when they "deny, delay, or intentionally interfere with medical treatment," and prison doctors can be deliberately indifferent in their provision of care. Id.

A prison medical provider's care violates the Constitution where the provider ignores a previous treating physician's instructions, knows that a course of treatment was ineffective but continued it anyway, or delays necessary treatment without justification. See Jett v. Penner, 439 F.3d 1091, 1097-1098 (9th Cir. 2006); Wakefield, 177 F.3d at 1165; Estate of Prasad ex rel. Prasad v. Cty. of Sutter, 958 F.Supp.2d 1101, 1112-1113 (E.D. Cal. 2013).  Purposefulness can be inferred where a prison doctor is aware of the extent of the inmate's pain but declines to do anything to improve the inmate's situation. See Jett, 439 F. 3d at 1098.  An inmate's harm need not be substantial, Id., at 1096 (citing McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992)); and even brief periods of unnecessary pain can give rise to an Eighth Amendment claim.

14

See Clement v. Gomez, 298 F.3d 898, 904-905 (9th Cir. 2002)(four-hour wait for pepper-sprayed inmates to shower could be basis of medical indifference claim); Scott v. MTA Keller, No. 2:07-cv-00184 WL 3635728, at *4 (E.D. Cal. Sept. 14, 2010)(two-day delay in treating hand injury gave rise to medical indifference claim).

A provider need not fail to treat an inmate altogether in order for his or her care to violate the constitution; rather, an inmate may have a valid deliberate indifference claim where his access to medical staff was meaningless because staff were not competent or did not render competent care. Ortiz v. City of Imperial, 884 F.2s 312, 1314 (9th Cir. 1989); Moore v. Thomas, 653 F.Supp.2d 984, 1000 (N.D. Cal. 2009).   However, negligence, inadvertence, or differences of medical opinion between the prisoner and health care providers are not unconstitutional. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Lyons v. Busi, 566 F.Supp.2d 1172, 1191-1192 (E.D. Cal. 2008); see also Colwell v. Bannister, 763 F.3d 1060, 1068 (9th Cir. 2014)(distinguishing plaintiff's long-uncorrected cataracts from "a case of ordinary medical mistake or negligence" and finding defendants deliberately indifferent).  Even a showing of medical malpractice or gross negligence is insufficient to establish a constitutional violation.  Simmons v. Navajo Cty., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Instead, "the plaintiff 'must show that the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to plaintiff's health.'" Snow v. McDaniel, 681 F.3d 978, 988 (9th Cir. 2012)(*overruled on other grounds by* Peralta, 744 F.3d at 1083)(citations omitted).

1

### B.  Serious Medical Need

Defendants do not dispute that Plaintiff had a serious medical need. Even before the X-rays revealed that Plaintiff's elbow had been fractured, his injury could properly be characterized as serious: taking uncontradicted Plaintiff's version of the facts as true, Plaintiff suffered significant swelling, bruising, and pain in his arm as soon as the injury occurred.  As time progressed, so did the seriousness of Plaintiff's injury, and his need for continuous care for over a year to combat recurrent MRSA infections.  Thus, the first prong of the deliberate indifference test clearly is met.

### C.  Deliberate Indifference

The Court is sympathetic to Plaintiff's medical plight.  His apprehension, frustration, and concern over the prolonged, unproductive treatment and the recurrence of significant and frightening symptoms are understandable. However, the Court must analyze his claims under the restrictive constitutional standards set forth above.   As noted, medical malpractice does not violate the Eighth Amendment, and to be unconstitutional, acts or omissions must go beyond simple negligence.[3]  Here the Court cannot find that Plaintiff has satisfied the second prong against all defendants; at most, he has raised triable issues as to whether he may clear that hurdle against some of them. The Court will separately analyze the validity of Plaintiff's claims of deliberate indifference against Defendants.

---

[3] Without competent expert opinion evidence of medical professional negligence, it would appear that even claims of medical negligence could not survive summary judgment here.  See Gorton v. Todd, 793 F.Supp.1171, 1180-1181 (E.D. Cal. 2011)(discussing role of experts in medical malpractice and deliberate indifference cases with indigent plaintiffs).

16

### 1.  Defendant Moore

Plaintiff claims that Moore ignored his pleas for medical attention in the wake of the April 20, 2007, assault.  Such claims are contradicted by medical records, the validity of which Plaintiff has not challenged.

The records indicate that Plaintiff saw medical staff twice on April 20, 2007.  The first time was in the morning, when Plaintiff was seen by an MTA, who noted scratches on Plaintiff's face and provided ibuprofen and an icepack.  The second was in the evening, when Plaintiff was seen by a nurse, who determined that Plaintiff's symptoms were not an emergency, and scheduled him for a follow up three days later.

Plaintiff then saw see medical staff on April 23 and was prescribed ibuprofen. Plaintiff does not allege Moore specifically denied a request to see medical staff on any occasion. The three reported appointments contradict Plaintiff's broader assertion that Moore prevented him from seeing medical staff for thirteen days.  Therefore, Plaintiff's claim of medical indifference fails against Moore.

### 2.  Davis-Jones

The evidence supporting Plaintiff's claim against Davis-Jones is in conflict. Plaintiff alleges that Davis-Jones told him that if he could move his arm, it was not broken, and she did not examine Plaintiff's arm further.  Davis-Jones does not recall any interaction with Plaintiff.  She provides no information from or about her schedule during the relevant period such as might corroborate or refute the claim.

Thus, the Court must for present purposes accept Plaintiff's unrefuted allegations as true. Comite de Jornaleros de Redondo Beach, 657 F.3d at  942.  Based this finding, Davis-Jones' failure to examine Plaintiff's arm on the grounds that his ability to move it

17

ruled out a fracture, rendered her purported "care" meaningless and effectively a denial

of treatment. See Ortiz, 884 F.2d at 1314; Moore, 653 F.Supp.2d at 1000. Therefore, the

Court will recommend denying summary judgment as to Davis-Jones.


### 3. Rabaino-Burns.

Plaintiff does not state a claim against Rabaino-Burns relating to her care during

the appointment he had with her on May 8, 2007.  Her notes, the validity of which

Plaintiff has not challenged, are inconsistent with his claim that she denied his requests

for medical care.  Specifically, although Rabaino-Burns determined on May 8, that

Plaintiff's complaints did not require emergency treatment, she did refer him to a

physician.  Indeed, Plaintiff was then scheduled for surgery in a matter of days.

Plaintiff's mere disagreement with Rabaino-Burns' course of action, even if that action

were medically ill-advised, does not transform it into an Eighth Amendment violation.

See Jackson, 90 F.3d at 332. Therefore, the Court will recommend granting summary

judgment as to Rabaino-Burns.


### 4. Nurse Vicente

Plaintiff alleges that Nurse Vicente was deliberately indifferent when she did not

refer Plaintiff to an outside facility on May 3 in response to Plaintiff's call slip complaint of

arm pain and request to see a doctor.

Again, mere disagreements between inmates and medical staff regarding the

appropriate course of treatment do not give rise to Eighth Amendment violations. See

Jackson, 90 F.3d at 332.  Moreover, Vicente's notes indicate that the appointment

resulted in Plaintiff being scheduled for X-Rays that day and that he had surgery the

18

following week.   Such facts belie a claim of medical indifference.  Therefore the court will recommend that summary judgment be granted as to Vicente.

### 5.  Mental Health Defendants

There is a dispute of material fact as to whether Plaintiff ever complained to any of the mental health staff about his arm pain or requested their help.

Plaintiff alleges he complained to every single LPT and all the mental health staff during psychiatric rounds, IDTT reviews, and psychiatric appointments; he claims that the bruising, swelling, and discharge from his elbow were plainly visible; he claims that he begged mental health staff for help, but they ignored him and also omitted reference to his requests in their notes.   Such facts, if true, could support a finding that the mental health defendants consciously disregarded an excessive risk to Plaintiff's health and thus were deliberately indifferent to his medical needs.

Defendants deny all those events and those claims.  The resulting credibility dispute cannot be resolved on summary judgment.  Soremekun, 509 F.3d at 984.  If Plaintiff's allegations are accepted by the trier of fact, they could establish a conscious disregard of an excessive risk to Plaintiff's health.

These Defendants argue that even if they had ignored Plaintiff's complaints of pain, the harm to Plaintiff would have been non-existent, or at worst, inconsequential because Plaintiff was being closely followed and treated by medical staff.

This appears to be arguably true during the period from June 6 through September 1, 2007, but not so during the period from April 20 through May 3.

Taking Plaintiff's account of the facts as true, his arm was swollen and painful from the time of injury on April 20 until the fracture was diagnosed on May 3.  During this

19

period, Plaintiff alleges that he brought his symptoms to the attention of LPTs, mental health staff at Plaintiff's IDTT review, and appointments with Roth and Urbano and all of them ignored his complaints. Although Plaintiff had two brief appointments on the day of the injury, and a follow up on April 23, it was not until Plaintiff submitted a medical call slip on May 1 that he was able to see a doctor to have his elbow examined. Thus, Plaintiff's characterization of events during the period April 20 through May 3 could support a finding that his injury went undiagnosed during that period as a result of the mental health department personnel's refusal to act on his complaints. That alleged delay in treatment may be actionable. See Clement, 298 F.3d at 904-905.

During the period June 6, 2007 through September 1, 2007, by contrast, Plaintiff was receiving constitutionally adequate medical care for his injured arm. He saw medical staff at least 12 times during this period. Plaintiff does not suggest, much less include evidence indicating, how his care could or should have differed had the mental health defendants responded to his complaints during this period. He has not linked the mental health defendants to any particular injury during this period.

### 6. Dr. Kim

Plaintiff fails to state a claim against Kim for failing to prescribe antibiotics in August or failing to send him to a hospital in November. A prison physician has broad discretion in prescribing treatments and medications, Toguchi, 391 F.3d at 1058, and even in situations where the risk of infection is elevated, the Eighth Amendment does not require a physician to put an inmate on antibiotics. See Price v. Henry, No. C 09-06050 2012 WL 1094441, at *5 (N.D. Cal. Mar. 29, 2012)(failure to prescribe antibiotics post-surgery not unconstitutional); Ahdom v. Lopez, No. 1:09-cv-10874 2010 WL 3001406, at

20

*5 (E.D. Cal. July 29, 2010)(same). Pursuing a less aggressive choice of treatment or a treatment that the inmate disagrees with will not violate the Eighth Amendment. Jackson, 90 F.3d at 332.  Here, the Court cannot conclude that Dr. Kim's "wait and see" approach to Plaintiff's symptoms in August, even in light of Plaintiff's history of recurrent infections, was "medically unacceptable under the circumstances."   Similarly, Kim's decision not to refer Plaintiff to a hospital when he did order X-Rays, prescribe medication, and schedule a follow-up in November did not demonstrate deliberate indifference.  Therefore the Court will recommend granting summary judgment as to Dr. Kim.

### 7.  Nurse Dava

There is a dispute of material fact about whether or not Plaintiff presented visible signs of infection when he saw Dava on March 21 and 25.  Even if this dispute were resolved in Plaintiff's favor, it would not support a claim of deliberate indifference.  As the Court stated with respect to Defendant Kim, medical staff members have broad discretion in prescribing medication. See Toguchi, 391 F.3d at 1058. Moreover, Plaintiff has presented no facts indicating that he needed to be seen immediately by a doctor, or that Dava's choice to defer major treatment decisions until a scheduled appointment, was medically unacceptable under the circumstances.  Therefore, the Court will recommend granting summary judgment as to Dava.

### D.  Qualified Immunity

"A state officer is not protected by qualified immunity where he or she has violated a clearly established constitutional right." Phillips v. Hust , 588 F.3d 652, 657 (9th Cir. 2009). "The relevant, dispositive inquiry in determining whether a right is clearly

21

1
2
established is whether it would be clear to a reasonable officer that his conduct was not

unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001).

3
4
5
6
7
8
9
10
    Here, the Court finds that Defendants are not entitled to qualified immunity.  The

right to adequate medical care is clearly established, and longstanding precedent holds

that an outright denial of such care violates that right. E.g. Colwell, 763 F.3d at 1066;

Jett, 439 F. 3d at 1098.  Here, Plaintiff's allegations, if believed, indicate that Davis-

Jones and the mental health defendants completely disregarded Plaintiff's complaints of

pain and requests for medical help. The Court finds that no reasonable officer would

believe such denial to be reasonable under the circumstances.

11
12
### 8.  CONCLUSION AND RECOMMENDATION

13
14
15
16
17
18
19
20
21
    The Court finds that Defendants Davis-Jones, Urbano, Roth, C. Gonzalez, M.

Gonzalez, Casio, Coronado, Cisneros, Galvan, O'Neal, Parsons, and Tamayo have not

met their burden of showing an absence of an issue of triable fact.[4]  By contrast, the

Court finds that Plaintiff has not met his burden of establishing a triable issue of fact

regarding Defendants Moore, Rabaino-Burns, Kim, and Dava.  In addition, the Court

finds that Defendants are not entitled to qualified immunity.  Based on the foregoing, the

Court HEREBY RECOMMENDS that Defendant's motion for summary judgment (ECF

No. 202) be GRANTED IN PART and DENIED IN PART.

22
23
24
25
26
    These Findings and Recommendations are submitted to the United States District

Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within

**fourteen** (14) days after being served with these Findings and Recommendations, any

party may file written objections with the Court and serve a copy on all parties. Such a

27
28
---
[4] The Court notes that the Mental Health Defendants' declarations include some information regarding the days they worked.  However, the Court is unable to determine conclusively which LPTs worked during the period of April 20 through May 3.  Therefore the Court denies summary judgment as to all of them.

document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).


IT IS SO ORDERED.

Dated:   June 17, 2015                     /s/ Michael J. Seng

UNITED STATES MAGISTRATE JUDGE

23